VERNAM *vs.* SPENCER.

*In the matter of Proving the Last Will and Testament of* WILLIAM A. SPENCER, *deceased.*

The testator having determined to modify a previous will, and the instrument prepared conformably to his instructions having been placed before him for execution, in the presence of two witnesses attending at his request, he signed it at the foot, and was seized with death as he was in the act of signing in the margin,—*Held* that the provision of the statute requiring the attestation of the subscribing witnesses had not been complied with, and that the instrument was not valid as a last will and testament, not being complete at the testator's decease.

The testator being still occupied in authenticating the instrument at the moment of the attack, *held*, under the circumstances, there was no testamentary declaration or rogation of the witnesses.

A will must be perfect at the testator's decease, and if not then a perfect instrument, it cannot take effect. There is no will until all the statutory ceremonies are completed. The mere intention to have them performed is not sufficient, but the intention must be effectuated in fact. The act of the witnesses is just as essential as the act of the testator. The request to the persons summoned as witnesses is revocatory till acted on. Death revokes it. At the time the witnesses sign, they must sign under a present existing request, and when death intervenes before their signature has been accomplished, they cannot sign after the testator's decease so as to give effect to the instrument. Whether one dies intestate or testate, is immutably fixed at the instant of death.

WILLIAM KENT, *for Executors.*

JOHN C. SPENCER, *Special Guardian, for Minor Legatees.*

The objections to the probate of the paper offered may be classed under the following heads :

1. The deceased, at the time of making his subscription to the paper, did not declare it to be his last will and testament.

2. He did not request the witnesses to sign their names thereto as such.

3. The witnesses have not attested it by their signature.

I. The deceased, at the time of signing the paper, and during the same interview with the witnesses preceding that act, did substantially declare it to be his last will and testament.

In *Remsen* vs. *Brinckerhoff*, 26 *Wendell*, 332, Chief Justice Nelson, giving the opinion sustained by the Court for the Correction of Errors, says :

" I agree that no form of words will be necessary ; that the legislature only meant that there should be *some* communication to the witnesses indicating that the testator *intended* to give effect to the paper as his will. *Any* communication of this aim or to this effect, will meet the object of the statute."

In the same case, Senator Verplank, p. 336, says, " the word *declare* will always be found distinctly to signify, ' to make known, to assert to others, to show forth,' and this in *any manner*, either by words or *by acts*, in writing or by signs."

At page 338 he says, " at the end of the instrument was an attestation clause setting forth in the customary form, ·&c. &c. This, if the witnesses had been asked to read it by .the testatrix, or in her hearing, would have been a silent, but clear *declaration*."

In the present case, this clause, with all the rest of the paper, was read by one of the witnesses to the deceased, perhaps not in the presence of both ; but the fact of its having been read previously to the signature, is thus made one of the *acts*, and a very important one, of the intent of the testator to give effect to the paper as a will.

He knew that the paper so read was a will, and when brought to him he signed it as such, and the other witness presented it *as a will* for signature, and attended to witness it as such, and he therefore understood the deceased to intend it as a will.

The same principle is fully stated in the opinion of Chancellor Walworth, in the same case, when it was before him. 8 *Paige*, 499.

The same doctrine is established in the case of *Nelson* vs. *McGiffert*, 3 *Barb. Ch. Rep.* 163, where *facts* and occurrences not so strong as those in this case were considered abundant proof of publication, or declaration that the paper was a will.

It is also recognized and sustained in principle by the case of *Seguine* vs. *Seguine*, 2 *Barb. Sup. Court Rep.*, 385.

In *Campbell* vs. *Logan*, 2 *Bradford*, 98, 99, the surrogate recognizes the principle of a substantial declaration, although not in words, and declares that "if there was nothing else than the reading of the whole instrument aloud, and the approval of the testatrix, I think this would be a sufficient testamentary declaration."

In *Ex parte Beers*, 2 *Bradford*, 163, the same general principle is recognized, that if the witnesses and the court could safely and surely conclude from the acts, words and circumstances attending the transaction, that it was the intention of the deceased to publish the paper as his will, it will be sufficient. The facts of that case and the deficiencies pointed out by the learned surrogate, are in strong contrast with the facts in this case.

The language of the same surrogate, in *Moore* vs. *Moore*, 2 *Bradford*, 265, on *the manner* in which the assent of the testator may be shown as evidence both of publication and of a request to the witnesses to attest the will, is so clear, and so adapted to this case, that it is deemed only necessary to refer to it.

After all, the whole principle is so accurately expressed by the surrogate, in the case of *Wilson* vs. *Hetterick*, 2 *Bradford*, 427, that I cannot forbear quoting it : " The testator must know that the witnesses know the testamentary nature of the act, and *vice versa ;* and this mutual knowledge must arise from something said, done, or signified contemporaneously with the execution of the instrument." To this test this paper must be subjected, and it will bear the ordeal. Both the witnesses will not only show by circumstances, but doubtless will testify explicitly, that they and

each of them knew that the paper was a will, and that the deceased also knew that they knew that it was his will, at the time of subscription.

The case of *Heyer* vs. *Burger, et al.*, 1 *Hoffman Ch. R., p.* 1, is overruled by the cases above cited, where cotemporaneous publication was held sufficient.

I have not found any other cases in the reports of this State, than the above, on the point in question, except that of *Seymour* vs. *Van Wyck*, 2 *Selden*, 120. There the Court of Appeals decided that there must be a declaration or acknowledgment that the paper is a will, to *both* of the attending witnesses. It appears from the case that Caroline See, one of the attesting witnesses, did not hear the paper read, did not know its contents, or character or nature; heard nothing from the testator as to its character or nature, and was merely requested to sign her name to that paper. This comes exactly within the rule of the Surrogate of New York, before quoted, that the witnesses must know the testamentary nature of the act, and the testator must know that they possess such knowledge. There clearly was no publication in the case.

Conceiving the principle to be so clearly established by the courts of our own State, I do not deem it necessary to refer to the decisions of other States or of the English courts. The latter are all referred to by the chancellor in *Brincker-hooff* vs. *Remsen*, 8 *Paige*, 492. That of *Peate* vs. *Ougley*, in *Comyn's Rep.*, 197, is very analogous to the present.

I find nothing satisfactory in the English cases, beside those referred to by Chancellor Walworth. They will be found, however, collated in 1 *Jarman on Wills*, 46, 47, 110, and following pages.

II. There was a request by the deceased to the witnesses, to sign the paper and attest it as witnesses.

The Supreme Court, in the case of *Rutherford* vs. *Rutherford*, 1 *Denio*, 36, say that the sending for a person to be a

witness, was a constructive *request* to him to sign the paper, which should have been submitted to the jury.

Here the paper was sent for the express purpose to Mr. Eaton, of being copied and brought to the deceased, by him, that he might witness it. He understood that he came for that purpose, and did actually attend in consequence to attest the execution of the paper as a will.

The statute nowhere specifies *when* the request shall be made. And in reason and propriety, a recent request through a third person, complied with by the witness, and his attendance for that purpose recognized by the deceased, by many acts at the time, and particularly by actually signing in his presence, should be deemed more satisfactory than even formal words.

Whatever may be the weight of the opinion of Chancellor Walworth, in *Chaffee* vs. *Baptist Missionary Convention*, 10 *Paige*, 91, 92, as to the effect of the acknowledgment made by the deceased, the decision itself is merely that in the case of an illiterate person unable to write her name, there must be proof that she directed her name to be signed in the presence of the witnesses, or that she acknowledged the *signature* and not the will merely. The case has no bearing on this or any other point in this case, because here the witnesses actually *saw* the deceased sign the paper.

III. Although the witnesses have not yet attested the paper by their signature, they may still do so, and doubtless will, under the decision of the surrogate, and probably may be compelled to do so.

It is no longer necessary under the revised statutes that the witnesses should sign in *the presence of the testator*, but they may do so at any other time or place. This was so decided expressly by the Surrogate of New York, in *Ruddon* vs. *McDonald*, 1 *Bradford*, 352.

And although Justice Hand, in *Butler* vs. *Benson*, 1 *Barb. Sup. Court Reps.*, 526, holds the contrary, he is clearly wrong.

The revisers had presented a section in the words of the English statute of frauds, 29 *Charles, II. ch.* 3, requiring that the witnesses should subscribe their names in the presence of the testator. (3 *Rev. Stat., p.* 627, *2d edition.*)

The English statute on this point had been the subject of numerous decisions, many of them, if not actually conflicting, yet so contradictory, that it was next to impossible to determine what constituted the presence of the testator. See *Jarman on Wills,* 74 *to* 78, *on p.* 118 *of Boston Edition of* 1849.

Chancellor Kent, in his lectures, (*Lecture* 68,) *p.* 514, &c., remarks upon the effect of these decisions as opening a door to very extensive litigation. The legislature, evidently with a view to close this door, dropped, as Chancellor Kent expresses it, the direction in the English statute, that the witnesses are to subscribe in the presence of the testator. See 3 *Rev. Stat. 2d edition, p.* 631.

Here is a case plainly within the rule given in *Theriat* vs. *Hart,* 2 *Hill,* 380, and in the *Matter of Brown,* 21 *Wendell,* 319, that a mere change of *phraseology* in a revision of the statutes will not alter the law unless it evidently appear that such was the intention of the legislature.

Those cases were upon statutes where the same or a similar idea was expressed in the revised statutes, with that in the previous ones, but in different language. But here there is no change of phraseology, the requirement is omitted wholly, and its importance was such that it could not have been omitted unadvisedly or by mistake, and it was evidently the intention of the legislature to change the law.

It must be conceded on all hands, that whatever may be the natural right of a man to devise his property by will, (see *Senator Verplanck,* 26 *Wendell,* 333,) that right is to be exercised in conformity with the existing laws, and if it be so exercised, the devise is valid. Prior to any statute of wills, almost any instrument in writing, not even signed, and in some cases verbal devises, were sufficient to dispose of personal property by a *testamentum.* (*Williams' Execu-*

*tors*, 47, &c.) When alienation of land by devise was permitted, certain requisite forms were imposed. These have been varied, from time to time, and the only question now is, whether a paper claimed to be a will, has been executed and attested in the manner *required by statute.* The courts have no authority to interpose any form or proceeding to give it validity, which is not prescribed by legislative authority.

It is therefore sufficient in any case, when it is objected that a particular form or manner of proceeding has not been adopted,—it is sufficient to say, no statute requires such form or proceeding.

By the general repealing act of December 10, 1828, (3*d Rev. Stat.*, 3*d Ed.*, [133] 164, *at N. Y.*, 95,) an act concerning wills passed March 5th, 1813, is expressly repealed. That act contained the provision requiring witnesses to a will to subscribe it in the presence of the testator. The previous acts concerning wills were repealed by that act, and were not revived by its repealing act. (§ 8 *of repealing act, p.* 185.)

The consequence is, that there is no statute requiring such subscription to be in the presence of the testator. Those who maintain the contrary, hold the affirmative, and must point out the law making it necessary.

In this view, we need not trouble ourselves about probable intent. The *repeal* is absolute and admits of no dispute.

2. As, therefore, the witnesses are not required to subscribe the will in the presence of the testator, they may do so in his absence, or even after his death, within such reasonable time as shall indicate fairness.

*Wright* vs. *Wakefield*, 4 *Taunton*, 213, is an authority that this may be done. Lawrence, J., and Mansfield, Ch. J., (interrupting counsel,) evidently admit that ordinarily one who was actually the witness chosen by the parties, might add his attestation at any time. Lawrence, J., states that it has not been unusual to allow a person to add his attestation, in open court. This must mean where he was the actual witness chosen by the party. Chambers, J., admits the fact, and

says the practice has been rendered subservient to fraud; and then proceeds to put an entirely different case, that of allowing a person to attest who was NOT the chosen subscribing witness. His testimony, however, corroborates the fact of the practice.

Mansfield, Ch. J., certified to the chancellor, that he knows "no rule or case which requires that the attestation should be immediately written at the time of the execution of the instrument, or within any limited time after its execution." *p.* 223.

The certificate of Justices Heath, Lawrence, and Chambers does not purport to lay down a general rule, but that under the circumstances of that case, the parties creating the power, which the instrument in question would execute, had in their contemplation and intended [as a check upon its execution] that the attestation of the signing and sealing the instrument should be a part of the same transaction with the signing and sealing by the grantors.

That this opinion was founded upon the peculiar operation of *powers*, is shown by reference to the same case in the Court of Chancery, 17 *Vesey*, 454, beginning of the Lord Chancellor's opinion.

What became of the case after the judges of the Common Pleas certified their opinion, I have not been able to find.

*Henry* vs. *Bishop*, 2 *Wend.*, 575, Ch. J. Savage says, " so long as we retain the rule (of proving deeds by a subscribing witness) we must preserve the reason assigned for it, to wit, that the witnesses who subscribe at the time of the execution, are agreed upon by the parties to be the only ones to prove it." Shipherd (the witness who proved it) was not a chosen witness of the parties, but was one of those who executed it. Here were two reasons why he could not be permitted to prove it. The third, that he had heard the party acknowledge it, was of course improper while there was a subscribing witness not accounted for. This case, therefore, is not an authority that the witnesses *chosen by the parties* may not sign their attestation at any time.

We come now to the case of *Hollenback* vs. *Fleming*, 6 *Hill*, 303. The affidavit of Charles T. Avery, to prove the arbitration bonds was regarded as equivocal. Judge Bronson says, page 306, "that may be true, although the name was affixed only the moment before, and without *the request* or knowledge of the obligor." This was in itself sufficient to condemn the proof by a volunteer witness not selected by the party. But the judge goes further, and cites the above case of *Henry* vs. *Bishop*, as deciding that no one is an attesting witness who did not subscribe his name as such,"at *the time* the instrument was executed." Now, with great deference, that case neither decides nor asserts any such thing. All that is said on that point I have quoted. Ch. J. Savage is describing who are the only competent parties *to prove a deed*, viz., those who were agreed upon by the parties for that purpose, and they are identified by the fact, that they subscribed *at the time*. There is not an authority or a dictum to support this definition by Judge Bronson of a subscribing witness, as one who was present when the instrument was executed, *and* who, *at that time*, subscribed his name to it, as a witness to its execution. He cites no other authority for it, but that of *Henry* vs. *Bishop*, already shown to contain no such doctrine. I argue that one who merely testifies to a subsequent acknowledgment, cannot be a *subscribing* witness, although he signs his name, for he did not witness the signing or execution by the parties, and was not agreed on by them as a witness of the transaction. But this is a question entirely different from that, whether the witness chosen by the party, to attest the act, may not, at *any time*, make such attestation. And it seems to me Judge Bronson has confounded the two classes erroneously.

In *Cussons* vs. *Skinner*, 11 *Meeson & Welsby*, 161, Lord Abinger says, "the subscribing witness is essential, not for the reason stated by some of the counsel, but because the party to whose execution he is a witness, is considered as invoking him as the person to whom he refers, to prove what passed at the time of the attestation."

He never anywhere alludes to the necessity of the witnesses signing at the time of the execution; on the contrary, the strong inference from his remarks is, that if W. Smith, Jr., whose name was written as a witness, had himself signed it, " after the matter was all over," his being a subscribing witness would depend on the fact whether he had been " invoked " by the party, to witness it.

The error of Judge Bronson, and sometimes of the writers, arises from a loose mode of speaking. We call a *subscribing witness,* one who has already attested the execution of an instrument by his signature, and therefore attach to the name the idea of his having done the act. But the true inquiry is, who *may be* a subscribing witness? And having ascertained that, it is quite unimportant when he makes himself such; except in those cases, as in the former statute of wills, where the time of attestation is prescribed.

It is submitted also, that the change made by the legislature, in dispensing with the rule that the witnesses should sign in the presence of the testator, has permitted them to sign at a different time from that when he subscribed his name. The object of the old rule, as given by the writers, was that the testator might be certain of the identity of the paper they attested; 2 *Greenleaf Ev.* § 678; and its effect was to make them sign at the time of the execution of the will.

There is therefore now no reason left for requiring them to sign at the time of the execution by the testator, for they may change the paper just as readily, in a secret room, immediately after he has executed, as at any subsequent time.

In the present case, the witnesses who are expected to attest the instrument by their signatures, were the chosen witnesses of the testator, in attendance at his request for the purpose; they did actually see him subscribe the paper *as* his last will and testament. They do not speak of any subsequent acknowledgment.

They should have signed their names at once under the attesting clause, but they were appalled by the solemn scene

before them, and in doubt respecting their duty. Had they signed immediately, no question could have arisen. Shall their omission, however excusable, deprive the devisees in the paper, of the rights and interests intended to be given them by the testator?

If this principle be established, what is to prevent witnesses, called on to attest the execution of a will, from taking it away after it has been executed, on the pretence of signing it in another place, and then wilfully and even corruptly omitting to sign?

It cannot be, that the rights of devisees are to be dependent on the caprice, or ignorance, or cupidity of a witness, in refusing or neglecting to fulfill entirely that which he has undertaken to do, and on the performance of which he has entered, by consenting to see the execution of a will or deed.

There is a contract between the witness and the testator, and equitably with his friends, the legatees, to do a specific thing for their benefit, of which there has been a part performance, and there is no need of a consideration, for the fact of commencing the performance makes it binding; and as the breach of this contract cannot be compensated in damages, upon the ordinary principle of a court of equity, full performance would be enforced.

*Watkins* vs. *Maule*, 2 *Jac. & Walker*, 242, is an authority that the court will compel the performance of a promise to indorse a promissory note, when it has been omitted by design, accident, or mistake. (*See Story's Eq.*, § 729, &c.) It is an ordinary practice by Mandamus to compel the performance of a duty once assumed. But it is not supposed that any coercion will be necessary in the present case, but that the gentlemen who witnessed the execution of the will, upon an intimation from the Court that they cannot possibly injure themselves, and that it is proper they should sign, in order to enable the devisees to present fairly the questions arising as to the publication and request, will cheerfully and readily sign the attestation clause. And it is hoped the Surrogate will be willing to instruct them on this subject, as it

is evident nothing can be done by him in respect to this paper, until it is actually attested by the witnesses.

THE SURROGATE.—On the twenty-third day of February, 1851, the testator duly executed his last will and testament. On the third day of March, 1854, being confined to his room by sickness, after having heard read the draft of another will, he directed Mr. Davis to take it to his counsel, have it prepared as soon as possible, and return with some person from the office to witness the will with him. The instrument having been engrossed, Mr. Davis, about one o'clock in the afternoon, repaired to the testator's residence, in company with Mr. Eaton, the other proposed witness. Mr. Davis proceeded to the testator's room alone, and read over to him the entire instrument except the attestation clause. A blank was filled by the decedent's direction, the date inserted, and Mr. Eaton was then called in. The decedent pointed to a candle on the mantel-piece, which act led Mr. Davis to inquire if " the will was sealed." Mr. Eaton replied that it was ; and having his hand on the paper, holding it for the decedent to sign, said, " Mr. Davis have you read the will to Mr. Spencer ?" The testator instantly nodded his head, and uttered the words " read it," or " read will." He then subscribed the will at the end. Commencing to sign the next page on the margin, he wrote the two initial letters of his name, the pen dropped from his hand, he fell back in his chair, and in a few moments breathed his last.

The will was presented for probate in this condition. After the return of the citation, the parties who were present at the subscription, on the request of counsel, subscribed the will ; not however by placing their names to the attestation clause, but in the following manner :—" This instrument was subscribed by Mr. Wm. A. Spencer in my presence ; but after he had subscribed his name, he died, without acknowledging it as his will, and without requesting me to witness it." N. Y. April 22, 1854. Ezra P. Davis. " The signa-

ture of the testator, W. A. Spencer, to the foregoing instrument, was by him subscribed thereto in my presence, on the third day of March, 1854, under the circumstances mentioned in my affidavit relative thereto, sworn by me before the Surrogate, &c." April 22, 1854. D. B. Eaton.

The particular form of these statements does not seem to me at all material, provided the will has been executed according to law, and the witnesses had authority to sign at the time they subscribed, so as to give the will effect.

The single question is, was this paper duly executed as a last will and testament. In determining this important point, all forms will be discarded save such as the law has made essential. That this paper contains the last expression of the decedent's wishes cannot be doubted, and every moral consideration should induce the Court to sustain it if possible. The chief difference between the first and the last instrument consists in the increase of a bequest to his daughter from twenty-five thousand to forty thousand dollars. He died in attempting to effect this more favorable disposition, and if it can be sustained in consonance with the rules of law the Court should struggle to do so. Two cases that have occurred in my experience, where one of the witnesses had not signed in the testator's life-time, admonish me that the rules applicable to the subject must be treated in their general relations, and that to bend them to the emergencies of a particular case tends to the establishment of a dangerous precedent.

I have perused the able and elaborate argument of the learned counsel, who moved the probate, and have fully considered his positions. Had the witnesses subscribed in the testator's life-time, and in his presence, and without objection, there would have been enough in all the circumstances to justify sentence of probate, notwithstanding the absence of a formal testamentary declaration and request to the witnesses to attest. Not that I consider the statute to require the witnesses to sign in the testator's actual presence or view, but the fact that the testator has seen them sign and

acquiesces therein, often aids the proof of testamentary declaration and request, and gives weight and substance to informal and casual declarations. But in the present case, although the testator had subscribed the will at the seal, he was still engaged in signing his name in the margin, when his power of consciousness ceased. Though he had written all the law required him to write, he had not written all he proposed to write, and he expired before he accomplished his purpose. There was no finality even in *his* action; and much less had he arrived at that stage when the document was to be turned over to the witnesses for attestation. He had requested two persons to *attend*, in order to be witnesses, but he had not yet requested them to witness and attest the will, for he had not yet reached that point—he was still occupied in authenticating the instrument, and before it had left his hands he was seized with death. That event arrested the transaction in an imperfect and unfinished condition. I do not think therefore that under the circumstances the testator declared the instrument he was signing to be his last will and testament, or that he had requested the persons present to subscribe that instrument as witnesses. The help given to informal statements by the signature of the witnesses in the testator's presence, and with his approbation, is wanting.

But if the facts showed a complete act on the part of the testator, so far as related to his own subscription, the testamentary declaration and the request to the proposed witnesses to attest, and then an interruption of the affair by death, could the witnesses subscribe after his decease, so as to give the will validity? The statute requires the will to be subscribed by at least two attesting witnesses—can that act be performed after the death of the principal? At the moment of death the law disposes of his estate, either by descent or in conformity to his last will, if there be one. To interrupt the descent there must be a valid will. The will speaks at the instant of death. If without vitality then, what can ever give it vitality? If the will now under consideration

took effect on the testator's decease, then his property passed by an unattested instrument, and the statute of wills is set at naught. If it did not take effect then, but on the subscription of the witnesses, six weeks afterwards, took effect as of the time of the death by way of relation, it follows that the act of the witnesses operated to divest the heirs of property descended, and to vest it in devisees, under an instrument not perfected in the life-time of the ancestor. If the witnesses can perform that act an hour, or six weeks after the decedent has expired, they can do so a year after. Can the devolution of his estate depend upon them or their volition? If not, then they may be compelled to sign, although if the decedent were living they could refuse.

To the due execution of a will several ceremonial parts are necessary, and one just as necessary as another. There is no will until they are all completed. The absence of any one ceremony destroys the unity. These ceremonies are acts. The mere *intention* to have them all performed is not sufficient, but the intention must be effectuated in fact. If accident intervene to prevent their performance, the intention cannot be taken in lieu of performance, or instead of the act.

Nor is it enough to say the decedent has done all he could do, or all that he was called upon to do in his own person, and therefore the will is valid. Such a doctrine would make a will good, when the parties requested to subscribe as witnesses refused—which they might do from justifiable and conscientious motives. In the execution of the last will and testament nothing rests entirely in intention—and the act of the witnesses is just as essential as the act of the testator.

Nor do the parties requested to attend as witnesses contract to become witnesses. Till they sign, whether they shall become attesting witnesses or not, rests in their and the testator's absolute discretion. They may at the last instant perceive some reason for not authenticating the document. Till they sign, whether he shall complete the will, or whether they shall become attesting witnesses or not, is in the testa-

tor's absolute discretion. At the last moment his intention to perfect the will is still ambulatory ; and even after a formal request to them to sign, he may change his mind as to making a will at all, or may perceive some reason for preferring other witnesses. The request to the witnesses to attest is itself revocable till acted on. Death revokes it. At the time the witnesses sign, they must sign under a present existing request. The request is their authority, and they must act under a present subsisting authority. They derive all their right and power to subscribe from the testator's present volition and consent. When he ceases to exist, their power is withdrawn. Every derivative power depending on the will of the author dies with him, unless extended in express terms beyond his death.

But I do not think the testator had in the present case done all the law required him to do. To make a valid will, it was just as necessary for him to procure before his death the attestation and subscription of two witnesses, as it was for him to have the will drawn and subscribed. The testator is the prime mover—to devise his property he needs to see completed certain forms during his life-time ; and if by the intervention of Providence he does not live to see them all accomplished, the act is not completed. If Mr. Spencer had lived, the will now before me, in the state in which it was offered for probate, could not have been taken as a good will. The instant before his death it was not a valid will. The moment he died it was not a valid will—and then how could that which was not valid and perfect during life, and at death, become valid six weeks after he expired. Again, though the attestation in the testator's exact view is not necessary, still the attestation is in a certain sense part of the testator's act, and a ceremonial part of the will. The whole will is his act. The witnesses are mere aids or instruments in performing it. The attestation is part of the execution ; it is dependent on the testator's *request*, though not on his presence, and when the witnesses sign they do so for the testator, and as his agents.

For the various reasons advanced, I am compelled to conclude that all the formalities required by the statute must be celebrated, must be complete and ended, before the testator's decease; that as it is his will, *voluntas*, which is being made, and its execution, *factum*, celebrated, the continuance of his volition is essential at every stage of the transaction, gives vitality to every ceremony and every act, whether principal or accessory; and when that motive power ceases, every motion ceases, and the validity or invalidity, completeness or incompleteness of the act is fixed forever. I am constrained therefore to deny probate of the paper subscribed by the testator the day of his decease. The prior will of January, 1851, has been duly proved, and must be admitted to probate, as his last will and testament.